In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1408

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN WARDA,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 92 CR 134--Thomas J. Curran, Judge.

ARGUED APRIL 3, 2001--DECIDED April 1, 2002

Before POSNER, KANNE, and ROVNER, Circuit
Judges.

ROVNER, Circuit Judge.  The district
court vacated John Warda's sentence for
narcotics conspiracy after a separate
charge of escape, the pendency of which
had affected the terms of his plea on the
conspiracy charge, was dismissed.
However, on re-sentencing, the court
ordered Warda to serve a prison term five
months longer than his original sentence.
Warda contends that the dismissed escape
charge tainted his conviction, and that
the district court should have allowed
him to withdraw his guilty plea.
Alternatively, Warda argues that the
district court was precluded from re-
sentencing him to a longer term of
incarceration and that the court acted
vindictively in doing so. We affirm.

I.

A 1992 indictment charged Warda with
conspiring to possess with the intent to
distribute more than five kilograms of
cocaine. Federal marshals arrested Warda
in Florida and returned him to the
Eastern District of Wisconsin following
an unsuccessful escape attempt.

Warda signed a written plea agreement
with the government on December 1, 1993,
and in accordance with the agreement

pleaded guilty to the conspiracy charge on that same date. Warda also agreed to lend the government assistance with ongoing investigations, and in anticipation that Ward's assistance might turn out to be substantial, the parties persuaded the district court to postpone his sentencing until September 7, 1994. One week before he was to be sentenced, however, Warda broke out of the Ozaukee County Jail (where he had been transferred when his efforts to escape another facility came to light) and fled the country. He was apprehended in Mexico in January 1995, and one year later he was extradited to the United States.

Upon his return to Wisconsin, a grand jury indicted Warda for the crime of escape, see 18 U.S.C. sec. 751(a), and in late March 1996, Warda entered into a plea agreement addressing that charge, as well as an addendum to his 1993 plea agreement regarding the conspiracy charge. The former agreement provided, among other things, that the government would urge the district court to sentence Warda to the maximum prison term specified by the Sentencing Guidelines, such term to be served consecutively to his sentence on the conspiracy charge. The government also agreed, however, to supply information regarding Warda's cooperation to the United States Attorney in the Northern District of Illinois, where yet another charge against Warda was pending, and not to refer for prosecution the family members who had helped Warda while he was a fugitive. In compliance with this agreement, Warda pleaded guilty to the escape charge before Judge Warren on March 29, 1996. The addendum to the 1993 conspiracy plea agreement, on the other hand, provided that in exchange for Warda's guilty plea on the escape charge, the government would recommend a sentence on the conspiracy charge at the low end of the applicable sentencing range. Pursuant to the addendum, Warda agreed to withdraw all objections to the pre-sentence report ("PSR") that the Probation Office had prepared in anticipation of his sentencing on that charge. Warda subsequently honored this obligation and withdrew his objections to the PSR. See R. 96 at 3-4.

On March 29, 1996, Judge Curran sentenced Warda on the conspiracy charge.

The government, as it had agreed, recommended that the judge sentence Warda to a prison term of 188 months--the low end of the Guidelines range. However, Judge Curran rejected that recommendation. He reasoned that in view of the sentences he had imposed on Warda's co-conspirators, the length of time Warda had been involved in the conspiracy, Warda's role as a major supplier of cocaine to the organization, and Warda's belated demonstration of remorse, the proposed sentence was too lenient. See R. 96 at 13,15-17. He ordered Warda to serve a term of 220 months in prison.

Subsequently, an obstacle to prosecution of the escape charge arose that ultimately resulted in the dismissal of that charge. The 1978 extradition treaty between Mexico and the United States contains a provision referred to as the Rule of Specialty, which does not allow the country to which an individual is extradited to prosecute that person for a crime unless the extraditing nation has expressly authorized such a prosecution. It turned out that Mexico, when it made the decision to extradite Warda, had not authorized the United States to prosecute him for escape. It withheld such consent because it did not view the circumstances of Warda's flight as meeting the criteria for the felony offense of escape under Mexican law. Neither the United States Attorney nor the district court was apprised of this impediment to prosecution until after Warda had already pleaded guilty to the escape charge. Through diplomatic channels, the Department of Justice sought a waiver of the Rule of Specialty, but Mexico declined the request. On August 13, 1997, Judge Warren granted the government's motion to dismiss the escape charge.

In April 1997, anticipating the dismissal of the escape charge, Warda filed a motion requesting Judge Curran to vacate, set aside, or correct his sentence on the conspiracy charge pursuant to 28 U.S.C. sec. 2255. In pertinent part, Warda contended that his attorney had failed to represent him effectively when, in order to resolve the escape charge, he advised Warda to, inter alia, sign the addendum (and thereby relinquish his objections to the conspiracy PSR), apparently without

realizing that the extradition treaty precluded the government from prosecuting Warda on that charge./1

Although the district court did not believe that Warda had been deprived of his right to the effective assistance of counsel, the court nonetheless vacated Warda's sentence. Judge Curran thought that it would place too great a burden on a defense attorney to insist that he investigate the terms of international treaties. Still, Warda had agreed to sign the addendum to his plea agreement in the conspiracy case based on the mistaken belief that the escape charge was valid. The legal impediment to the escape charge had not become apparent until after he was sentenced and the time in which to appeal had expired, so Warda had cause for failing to challenge the addendum and his sentence in a more timely fashion. At the same time, Warda had agreed to surrender his objections to the PSR in compliance with the addendum, and in that respect had suffered prejudice. Accordingly, the court recognized Warda's belated challenge to his sentence, and granted him a re-sentencing. The court ordered the Probation Department to prepare an update to the PSR and gave both parties the opportunity to file objections.

Warda took full advantage of the opportunity to raise objections to the PSR. Warda's counsel filed an eighteen-page memorandum identifying twelve separate objections. R. 130. Among other things, Warda argued that the PSR exaggerated his role in the conspiracy, that he was entitled to an offense-level reduction based on his limited involvement in the conspiracy, see U.S.S.G. sec. 3B1.2, that he was responsible for a lesser quantity of cocaine than the fifteen to fifty kilograms attributed to him in the PSR, that his offense level should not be increased for obstruction of justice, see U.S.S.G. sec. 3C1.1, that he was entitled to a decrease in his offense level for acceptance of responsibility, see U.S.S.G. sec. 3E1.1, that his offense level should be reduced further pursuant to the safety-valve provision of the Guidelines, see U.S.S.G. sec. 2D1.1(b)(6), and that he was entitled to credit for providing substantial assistance to the government, see

U.S.S.G. sec. 5K1.1.

Warda also filed a motion to withdraw his guilty plea. In that motion, Warda repeated a number of arguments that he had made in his section 2255 motion and that the district court had rejected. See n. 1, supra. He also argued that the addendum to his plea agreement, based as it was on the escape charge, tainted his guilty plea and entitled him to withdraw that plea.

On February 3, 2000, the court re-sentenced Warda. Finding that Warda had not identified a fair and just reason why he should be allowed to withdraw from his plea agreement, see Fed. R. Crim. P. 32(e), the court denied the motion to withdraw his guilty plea. R. 148 at 7. The court noted that the addendum, which Warda believed had tainted the plea agreement, was now a "nullity" in view of the fact that the court had ordered a new sentencing and permitted Warda to make objections to the PSR. Id. at 3. Accordingly, the court proceeded with the sentencing hearing. The court addressed each of Warda's objections to the PSR and where necessary heard testimony from both the defense and the government in order to resolve those objections. The court also heard testimony and argument in mitigation from the defense, and in aggravation from the government, which was no longer bound by the addendum to recommend a term of incarceration at the low end of the sentencing range. At the conclusion of the hearing, the court ordered Warda to serve a prison term of 225 months-- the top of the applicable sentencing range.

The court explained that it was imposing a higher sentence upon Warda than it had previously for a number of reasons and based on additional information not available to the court at the time of his original sentencing. R. 148 at 200. First, it had come to light that Warda had lied under oath at his change of plea hearing with respect to the extent of his education. Id. at 197. Previously, Warda had represented to the court that he had completed high school and had had some college-level instruction. At his second sentencing however, Warda's counsel disclosed that Warda had not completed his high school education until he began serving his prison term on the conspiracy

conviction. See id. at 182, 183. Similarly, when first sentenced, Warda had denied any prior abuse of drugs or alcohol; but in preparation for his second sentencing, he acknowledged having abused both from 1989 to 1992. See id. at 10. Further, in his section 2255 motion, Warda had also contradicted the representations he had made at the time of his guilty plea--in particular, that he had not been induced to plead guilty based on any promises not contained in the written plea agreement, and that his guilty plea was knowing and voluntary. Id. at 197-98; see n. 1, supra. Finally, several weeks after he was originally sentenced in 1996, Warda had testified at the trial of Thomas Mavridis, an attorney and friend who had been indicted for assisting Warda in escaping from the Ozaukee County Jail. See United States v. Mavridis, 114 F.3d 1192 (7th Cir. 1997) (unpublished), text in Westlaw, 1997 WL 284607. Judge Curran had presided over that trial. Judge Curran found that Warda had perjured himself on that occasion as well. Id. at 200.

As I stated before, there are so many contradictory examples here that the court is not going to take the time at this late hour to go into them, but I do find that I have learned additional information that I didn't possess at the time of your original sentencing . . . .

Everything else that I've learned today is bad for you, even to the point of where you now admit that you have abused alcohol and other drugs during 1989 to 1992, and particularly the fact that you perjured yourself in the Mavridis trial.

Frankly, I had been very tempted to recommend to the United States Attorney's office that they pursue an investigation after that trial was over, but determined that perhaps, as your mother has said, the court could extend some pity to a man who has made a mistake.

The problem is that you didn't just make a mistake, you made hundreds of mistakes and compounded them, and you caused great devastation among many families, many children, both economically and physically.

It is for that reason that the court, after giving careful consideration today

to what has been offered, has determined that based upon this new information, that the court can no longer impose the same sentence.

Id. at 200-01.

II.

At this juncture, Warda challenges his conviction and sentence on two grounds. Warda contends that his conviction is invalid based on the government's "injection" of the escape charge into the conspiracy plea agreement via the March 1996 addendum to that agreement. Warda Br. at 10. Alternatively, Warda contends that his new sentence is invalid because it is more harsh than his first. Having already been sentenced once, Warda reasons, he had a reasonable expectation of finality in the length of his prison term that precluded the court from imposing anything but an equal or lesser term of incarceration upon re-sentencing. That the court nonetheless ordered him to serve a longer period of incarceration after he had succeeded in having his first sentence vacated evinces vindictiveness, in Warda's eyes.

A. Warda was not denied the benefit of his plea agreement

Warda entered into the 1996 addendum to his 1993 plea agreement as to the conspiracy charge based on his intervening indictment for the crime of escape. That addendum, along with the separate plea agreement concerning theescape charge, were a package intended to resolve the conspiracy and escape charges together. As it turned out, however, the terms of extradition treaty with Mexico, coupled with the Mexican government's decision not to authorize a prosecution for escape, precluded the government from prosecuting Warda for that offense. Thus, the assumption underlying the addendum--that the escape charge was valid--was wrong. By the time the error came to light, however, Warda had already been sentenced on the conspiracy charge, and in keeping with the terms of the addendum, Warda had foregone his objections to the pre-sentence report. Given the invalidity of the escape charge, Warda argues, he was deprived of the benefit of his original plea bargain on the conspiracy charge,

and the district court was obligated to accede to his request to withdraw his guilty plea. We review the court's decision to deny Warda's motion to withdraw his plea for abuse of discretion. E.g., United States v. Wallace, 276 F.3d 360, 366 (7th Cir. 2002).

The district court did not abuse its discretion. In view of the court's decision to re-sentence Warda, we do not agree that Warda ultimately was deprived of the benefit of his original bargain with the government. The district court acknowledged that the addendum to the 1993 plea agreement was based on a separate charge for escape that turned out to be invalid. The court further acknowledged that in accepting the addendum to his plea agreement, Warda had surrendered his right to object to the probation officer's PSR. But as Judge Curran recognized, a new sentencing hearing sufficed to correct any detriment that Warda had suffered as a result of the ill-fated escape charge. Warda's original sentence was vacated, he was given an opportunity to object to the PSR--of which he took full advantage--and he was re-sentenced with the misunderstanding as to the viability of the escape charge having been resolved. These steps restored to Warda any and all rights of which he had been deprived by virtue of the 1996 addendum. The district court was not obliged to take the additional step of allowing Warda to withdraw his guilty plea. Warda made the decision to plead guilty in 1993, well before he escaped and long before the escape charge resulted in the 1996 addendum to the plea agreement. Once Warda was released from the addendum, he was restored to his original bargain with the government. Indeed, although he argues that "[g]ranting Mr. Warda resentencing did not fully alleviate the problems associated with this plea . . .," Warda Reply Br. at 1, Warda has identified no concrete respect in which the effects of the invalid escape charge lingered once the district court had granted him a new sentencing with the accompanying right to make objections to the PSR. Cf. United States v. Carr, 170 F.3d 572, 576 (6th Cir. 1999) (where trial court has sentenced defendant in violation of previously approved plea agreement, proper remedy is a new

sentencing hearing where defendant can be re-sentenced in accordance with that agreement; only if court cannot do this should it permit defendant to withdraw plea), cert. denied sub nom. Snyder v. United States, 527 U.S. 1028, 119 S. Ct. 2381 (1999).

B. The district court did not act vindictively in sentencing Warda to a longer prison term

Warda makes two related challenges to the lengthier sentence that the district court imposed on re-sentencing. First, Warda contends that he had a reasonable expectation of finality in his original sentence and that, as a consequence of that expectation, the Fifth Amendment's double jeopardy bar precluded the district court from ordering him to serve a longer term than the court had first ordered him to serve. See, e.g., United States v. Foumai, 910 F.2d 617, 619-20 (9th Cir. 1990) ("the double jeopardy clause prohibits augmentation of a criminal sentence when it would violate the defendant's reasonable expectation of finality"). Second, Warda argues that the district court's decision to impose a harsher sentence than it did originally gives rise to a presumption that the court acted vindictively, and that the court failed to articulate reasons for imposing the longer sentence that are sufficient to rebut that presumption, thus establishing a violation of his due process rights. See North Carolina v. Pearce, 395 U.S. 711, 726, 89 S. Ct. 2072, 2081 (1969).

We do not agree, in the first instance, that the double jeopardy clause required the district court on re-sentencing to impose a prison term either shorter than, or at most, the same as, the term that the court originally ordered Warda to serve. As the Supreme Court observed in United States v. DiFrancesco, 449 U.S. 117, 137, 101 S. Ct. 426, 437 (1980), "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." See also Pennsylvania v. Goldhammer, 474 U.S. 28, 30, 106 S. Ct. 353, 353-54 (1985). Here, it was Warda who asked the district court to vacate his original sentence pursuant to section 2255. He sought that relief on the

premise that he had been induced to accept the 1996 addendum to his plea agreement by his indictment for the offense of escape, a charge which, unbeknownst to him, was foreclosed by the terms of his extradition. When the court granted Warda's request for relief in the form of a re-sentencing, it not only wiped the slate clean of the original sentence, but also lifted the constraints that the addendum had imposed on each party. Warda was no longer precluded from making objections to the PSR, and the government was no longer obligated to recommend a sentence at the bottom of the applicable sentencing range. The sentencing process itself changed, in other words. Under these circumstances, Warda could not have had any reasonable expectation that his first sentence established a ceiling on the potential punishment that he could receive. See United States v. Moulder, 141 F.3d 568, 571-72 (5th Cir. 1998) (defendants' successful effort, based on intervening Supreme Court decision, to vacate convictions on firearms charges to which they had pleaded guilty did not foreclose the subsequent imposition of longer sentences on narcotics charges that government pursued upon vacation of firearms convictions); see also United States v. Smith, 103 F.3d 531, 535 (7th Cir. 1996) (district court was not precluded from re-sentencing defendant to increased term on surviving counts of conviction after granting defendant's motion to vacate conviction on firearms charge, notwithstanding fact that defendant had already completed his original sentence on the surviving counts), cert. denied, 520 U.S. 1248, 117 S. Ct. 1861 (1997).

Nor do we find that the imposition of a lengthier term bespeaks vindictiveness on the part of the sentencing judge. "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" United States v. Goodwin, 457 U.S. 368, 372, 102 S. Ct. 2485, 2488 (1982), quoting Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S. Ct. 663, 668 (1978). Yet, we may presume such vindictiveness, as Warda argues that we should, only when the circumstances underlying the re-sentencing give rise to "a 'reasonable likelihood' . . . that the increase in sentence is the product of actual

vindictiveness on the part of the sentencing authority." Alabama v. Smith, 490 U.S. 794, 799, 109 S. Ct. 2201, 2205 (1989), quoting Goodwin, 475 U.S. at 373, 102 S. Ct. at 2488. The classic instance triggering the presumption is the one in which the same judge tries and sentences a person for a second time after he has succeeded in having his original conviction reversed. E.g., Pearce, 395 U.S. at 725-26, 89 S. Ct. at 2080-81; see Smith, 490 U.S. at 798-99, 109 S. Ct. at 2204. We are not convinced that the facts of this case present such a scenario. As we have noted, the relief that Warda obtained by virtue of his section 2255 motion was not simply a re-sentencing, but re-sentencing based on a materially different record. When sentenced for the second time, Warda objected to many facets of the PSR, and in fact presented substantial evidence in support of his objections. Pursuant to the addendum to his plea agreement, Warda had pursued none of these objections when he was sentenced for the first time. The government, for its part, no longer argued for a sentence at the low end of the sentencing range, and presented substantial evidence in response to Warda's objections and in an effort to justify a prison term greater than the 188 months it had originally proposed. In short, Judge Curran re-sentenced Warda in 2000 against a backdrop materially different from the one present in 1996. See id. at 801-02, 109 S. Ct. at 2205-06. The difference is highlighted by the fact that the original sentencing hearing in 1996 barely took forty-five minutes, whereas the second hearing in 2000 took the better part of a day. Compare R. 96 with R. 148. His decision to impose a sentence longer by five months than the first sentence he imposed therefore does not reasonably suggest that the disparity was due to vindictiveness.

Even assuming, arguendo, that the circumstances would support a presumption of vindictiveness, Judge Curran articulated reasons for the increased sentence, based on objective information regarding Warda's conduct, which were sufficient to rebut that presumption. See Pearce, 395 U.S. at 726, 89 S. Ct. at 2081. The judge expressly found that the longer sentence was justified by the new information made available to him on re-sentencing, noting that Warda previously

had lied about his education, failed to disclose his history of drug and alcohol abuse, had contradicted his statements under oath regarding the knowing and voluntary nature of his guilty plea and, in particular, had perjured himself at the trial of attorney Mavridis. R. 148 at 197-201. Warda contests neither the accuracy nor the pertinence of the court's findings with respect to these inconsistencies. We believe that these findings are more than sufficient to justify a five-month increase in the sentence that the court imposed on Warda, and thus to dispel any suggestion of vindictiveness.

III.

For the reasons we have discussed, we conclude that the district court did not abuse its discretion in declining to permit Warda to withdraw his guilty plea. We further find that the district court was entitled to impose a lengthier sentence on Warda upon re-sentencing, and that the court's decision to do so was not due to any vindictiveness on the court's part. We therefore AFFIRM Warda's conviction and sentence.

FOOTNOTE

/1 Warda sought to vacate his sentence and conviction on other grounds as well. He asserted that his attorney had promised him that he would receive a sentence of less than forty months in prison in exchange for his guilty plea--a sentence far lower than the one he actually received. He further alleged that he was taking prescribed medications on the day that he entered his guilty plea that made it difficult for him to completely understand what transpired during the change of plea hearing. Warda contended that his guilty plea was not knowing and voluntary for these reasons. The district court rejected these assertions. The court noted that it had taken "extraordinary measures to insure that the plea was voluntary, that Mr. Warda was not affected by his medications, and that he received no promises other than those contained in the plea agreement." R. 110 at 5.