**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bruno MANCARI, Defendant–Appellant.**

No. 89–2640.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1990.

Decided Oct. 4, 1990.

Laurie J. Barsella, Barry R. Elden and John N. Gallo, Asst. U.S. Attys., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee U.S.

Edward M. Genson, Marc W. Martin, Genson, Steinback & Gillespie, Chicago, Ill., for defendant-appellant Bruno Mancari.

Before COFFEY, FLAUM and MANION, Circuit Judges.

COFFEY, Circuit Judge.

A grand jury indicted Bruno J. Mancari on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and three counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Following a jury trial, Mancari was convicted on all counts, and was sentenced to four years' imprisonment on the conspiracy count and terms of five years' probation on each of the three distribution counts ordered to run consecutively to the prison term on the conspiracy count and concurrently with one another. In *United States v. Mancari*, 875 F.2d 103 (7th Cir.1989), we reversed Mancari's conviction on the conspiracy count, with directions to acquit and affirmed the conviction for delivery, but remanded "with directions to resentence." 875 F.2d at 107. Subsequent thereto Mancari was resentenced, and he now appeals the prison time given upon resentencing. We affirm.

## I.

### FACTS

Victoria Godomski, a Cook County, Illinois, Sheriff's Department officer, while assigned to work as an undercover drug enforcement agent for the Northeast Metropolitan Enforcement Group, a drug enforcement task force composed of state, county, and local police departments in the

suburbs of Chicago, Illinois, purchased cocaine from the defendant Bruno Mancari.[1] Mancari was convicted on three counts of distribution of cocaine involving sales to Godomski on May 20, June 6 and June 28, 1985, and of conspiracy to distribute cocaine as a result of his drug activity "from in or about May 1985 through July 1985."

### A. The Original Sentencing

At the original sentencing hearing on June 16, 1988, the court ordered Mancari to serve a period of confinement of four years on the conspiracy count. At this time the trial judge suspended sentence on Mancari's three distribution counts and imposed five years of probation on each count to run concurrently with each other and that the probation terms be served consecutively to the prison sentence on the conspiracy count. Prior to imposing this sentence, Judge Leinenweber explained his intentions in imposing sentence, as follows:

> "A jury of your peers heard the case and found that you were guilty. The problem I have is that the evidence showed that you were guilty of multiple sales.... [A]ll of the evidence indicated to me that you were a very, very willing and eager participant and you did so in order to make money for yourself.
>
> \*   \*   \*   \*   \*   \*
>
> I am glad to see, particularly, that you haven't reverted to narcotics....
>
> ... The statute gives me the power to sentence you up to sixty years in the penitentiary and fine you $500,000. You are not in any position to pay a fine. So, I am not going to impose a fine but I am going to impose, as I should, a prison sentence.... I must consider not only punishing you, your chances of rehabilitation, but to deter. You were the next level, presumably, to the user, which is a

very important cog in the distribution system. If there weren't the Bruno Mancari's the price of narcotics probably wouldn't be as high as it is because it would be much more difficult to distribute it." [2]

### B. Mancari's Successful Appeal of His Conspiracy Conviction

On the appeal of his conspiracy conviction, Mancari argued that, because of the acquittal of a co-conspirator on the conspiracy count, the same evidence presented against him must have been insufficient for a reasonable factfinder to find that he (Mancari) was guilty of conspiracy to distribute cocaine. In his successful appeal of the conspiracy count, Mancari also contended that the government introduced evidence of the April 23 and May 2, 1985, cocaine transactions as evidence of other criminal acts under Section 404(b) of the Federal Rules of Evidence only for the limited purpose of demonstrating "'the larger picture of the transactions which form the indictment.'" *Mancari*, 875 F.2d at 105. He reasoned that the jury could not properly rely upon this evidence in convicting him for conspiracy, and thus there was insufficient evidence to convict him of conspiracy. The court ruled in Mancari's favor, concluding that the "government's improvident concessions regarding the 'rule of consistency' [involving the relationship between Mancari's conviction and his co-conspirator's acquittal] and the temporal scope of the conspiracy have assured that the evidence of Mancari's participation in a conspiracy would be insufficient." *Mancari*, 875 F.2d at 107. In the opinion addressing Mancari's contention regarding the "rule of consistency," the court noted that the government had failed to cite or rely upon the Supreme Court decision in *United States v. Powell*, 469 U.S. 57, 105

---

1. Because the question in this case deals exclusively with Mancari's resentencing, it is unnecessary for us to discuss in detail the facts surrounding his convictions. Detail may be found in *United States v. Mancari*, 875 F.2d 103 (7th Cir.1989).

2. On September 30, 1988, Mancari, in a separate case in federal court, was sentenced to a term of three years' imprisonment on mail fraud charges in connection with his participation in a scheme to steal and rebuild automobiles for resale. Judge John A. Nordberg sentenced Mancari to a term of three years' imprisonment, to be served consecutively to the four-year term of imprisonment imposed in the drug case, followed by a five-year period of probation.

S.Ct. 471, 83 L.Ed.2d 461 (1984), a case rejecting an attack on allegedly inconsistent verdicts involving a single defendant. *See Mancari*, 875 F.2d at 104–05. The court explained why the government had unwisely conceded this point:

"The government agrees that for purposes of this appeal the acquittal of DelPercio on the conspiracy count prevents us from upholding Mancari's conviction of conspiracy on the basis of evidence that he conspired *with* DelPercio, since on that basis the jury, to be consistent, would have had to convict DelPercio too. The government's concession is consistent with the many cases affirming the 'rule of consistency,' see, e.g., *United States v. Sachs*, 801 F.2d 839, 845 (6th Cir.1986), but is unwarranted. In *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Supreme Court, reaffirming *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), held that the acquittal of a defendant on one count does not invalidate his conviction on the other count(s), even if the acquittal and conviction are inconsistent. Powell was acquitted of conspiracy to possess and possession of cocaine but convicted of using the telephone to facilitate these offenses. In upholding his conviction the Court emphasized that the acquittal was as likely to have been error as the conviction, and that a defendant is in any case protected from being erroneously convicted by his right to challenge the sufficiency of the evidence on appeal—whereas the government has no protection against an erroneous acquittal since with immaterial exceptions it cannot appeal an acquittal.

\*   \*   \*   \*   \*   \*

"Although *Powell* and *Dunn* are cases where the inconsistent verdict was rendered against one defendant, their reasoning applies with undiminished force to a case in which the jury has treated codefendants inconsistently. (Cf. *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), holding that the acquittal of the principal offender does not preclude conviction of his aider and abettor.) The acquittal of a codefendant may have been motivated by sympathy for that defendant but the government can do nothing about it. The jury in this case may just have been sympathetic to DelPercio and acquitted him lawlessly, although this is hardly a compelling inference since as we shall see the evidence against him was weak. But our only point is that after *Powell* there can be no *presumption* that the jury acquitted DelPercio because the government had failed to prove him guilty beyond a reasonable doubt, and convicted Mancari lawlessly."

*Mancari*, 875 F.2d at 104 (emphasis in original).

The court went on to hold that the government not only had unwisely conceded the above points regarding the "rule of consistency," it had also improvidently introduced evidence of cocaine transactions on April 23 and May 2, 1985, solely as evidence of other crimes rather than as evidence of the conspiracy. The court stated:

"The trial judge erred not in admitting evidence about [the April 23 and May 2] transactions but in admitting it as other-crimes evidence. The indictment charged that the conspiracy lasted 'from in or about May 1985 through at least July 1985.' ... The sale on May 2 fell squarely within the period of the alleged conspiracy. April 23 was only a week before May 1, and we think this was 'in or about May,' since 'from ... *about* May' (emphasis added) can include time in April.... The so-called other-crimes evidence therefore was admissible to prove Mancari guilty of a conspiracy....

"It would of course be irregular to affirm Mancari's conviction on the basis of evidence admitted for another purpose. But there is precedent for such an approach, *see United States v. Bailey*, 859 F.2d 1265, 1282–83 (7th Cir.1988); *United States v. Alexander*, 850 F.2d 1500, 1505 n. 3 (11th Cir.1988); cf. *United States v. Buckhanon*, 505 F.2d 1079, 1083 (8th Cir.1974), and the argument for affirmance would be a powerful one if we were confident that the jury had ei-

ther disobeyed the judge's instructions and considered the 'other crimes' evidence on the issue of conspiracy—which would not have been an error under our interpretation of the time limits in the indictment—or acquitted DelPercio out of sympathy, which would not have been an error of which Mancari could complain.

\*    \*    \*    \*    \*    \*

"Doubts must be resolved in favor of the assumption that the jury was rational, but the force of this precept is weakened in this unusual case where, given the weakness of the evidence against DelPercio, the jury, to have convicted Mancari rationally, would have had to disobey the judge's (incorrect) limiting instruction and consider the April 23 and May 2 transactions on the issue of the existence of a conspiracy. What makes this interpretation of the jury's verdict implausible, and in fact provides an independent reason against upholding the verdict on this ground, is that throughout the case the government has treated the transactions of April 23 and May 2 as other-crimes evidence and nothing more."

*Mancari,* 875 F.2d at 106–07 (emphasis in original). For the reasons set forth, we reversed Mancari's conspiracy conviction "with directions to acquit," but affirmed the convictions on the cocaine distribution counts and remanded to the trial court with directions to resentence Mancari on the distribution counts. *Mancari,* 875 F.2d at 107.

### C.  Mancari's Resentencing

At the resentencing hearing on the distribution of cocaine counts, the district court ordered Mancari sentenced to four years' imprisonment on one of the three distribution counts, suspended sentence on the remaining two counts and ordered concurrent five-year terms of probation on those two counts to run consecutively to the four-year term of imprisonment. Thus, the aggregate time of imprisonment and probation the district court imposed at Mancari's resentencing was the same as that Mancari received at the time of his original sentence, the subject matter of this appeal. The district court, in explaining the sentence imposed, stated:

"There are a couple of things that trouble me a little bit. One is that Judge Nordberg sentenced Mr. Mancari to a consecutive sentence of three years after I had sentenced him to four years. To what extent Judge Nordberg had taken into account the fact that he would normally serve a substantial portion of that four years prior to commencing the service of his three-year imposed sentence I don't know. In other words, Judge Nordberg may very well have felt that Mr. Mancari needed more than three years but because of the fact that he was serving a sentence and made his consecutive to that, I don't know what went into his consideration. . . .

"The second matter is that the reason the case was reversed—I appreciate the fact that a conviction on conspiracy was in fact vacated and made null and void. Nevertheless, the court indicated—and I do not wish to cause any embarrassment to the prosecution—that to a certain extent the reason that it was being vacated was because of an improvident concession on the prosecution's part. So, it was not a case where necessarily, that the facts were thus, that Mr. Mancari was playing innocent. . . .

"When one sentences a person to the penitentiary, obviously, one of the reasons that a judge sentences a person in that particular way is because he thinks he needs punishment and he hopes that, by the imposition of punishment, the person will learn and become a better person.

"I am very happy to see that in the nine months that Mr. Mancari has been incarcerated that apparently this particular reason for sentencing seems to have borne some fruit. He does seem to be a better person. . . .

"Nevertheless—and the defense were kind enough to include the transcript of the sentencing as an exhibit to their memorandum—I did make a very strong point at sentencing that deterrence is a

very important feature of sentencing. By giving what many people might consider to be an inadequate sentence deprecates the seriousness of the offense.

"I think most of us know, that, perhaps, the most serious problem facing society today is drug use. The reason drug use is as rampant as it is is because of its easy availability. I think I pointed out over a year ago that Mr. Mancari was not the source of the cocaine but he was a very integral part of the distribution system. He was the one that made it possible for the user to obtain cocaine. That is a very serious offense. It is an extremely serious offense. I don't see that, if I do what has been very strongly urged on me to make it so that, if effect, either by leaving probation as the sole sentence for this crime or by, in effect, doing the same thing by giving him a three-year concurrent sentence, which he would serve concurrently to the one Judge Nordberg gave him for the chop-shop operations, I think that would deprecate the seriousness of the offense and send out the wrong message."

## II.

### ISSUE PRESENTED

The issue before this court is whether the district court violated Mancari's Fifth Amendment right to due process of law at the resentencing hearing when it ordered him to serve a four-year prison term, the same period of confinement as ordered previously (conspiracy count set aside), as well as a five-year period of probation also previously imposed.

## III.

### DUE PROCESS

In *United States v. Jefferson*, 760 F.2d 821, 824–25 (7th Cir.), *vacated on other grounds*, 474 U.S. 806, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985), we observed:

"In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court held that an increased sentence could not be imposed *after retrial* without violating the due process rights of the defendant, unless the sentencing judge gave as reasons objective factors involving identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. *United States v. Tucker*, 581 F.2d 602 (7th Cir.1978). The rule is a prophylactic one, addressed more to the 'chill' that vindictiveness might throw over the inclination of future litigants to appeal than to the injustice done in the actual case. For that reason, *Pearce* creates a *presumption* of vindictiveness, and allow sentences to be increased only where the sentencing judge makes clear that the increase is based on behavior of the defendant since the original sentencing. The judge may not rely on a reconsideration of the conduct that led to the original sentence...."

(Emphasis in original). In *Jefferson* we went on to hold that "[w]e see no reason to distinguish, on the basis of this rationale, the case of resentencing after retrial from the case of resentencing after vacation of an illegal sentence." 760 F.2d at 825. Thus, *Pearce* sets forth guidelines a trial court must follow when *increasing* a sentence previously imposed upon remand. The question in applying *Pearce* is whether the sentence Mancari received upon remand should be considered an *"increase"* from the sentence previously imposed.

Mancari, in arguing the alleged increase of his sentence, points to the fact that the sentence given upon remand "increased [his] sentence on Count Two from probation to four years imprisonment." He also argues that, "under the formula established in *United States v. Monoco*, 702 F.2d 860, 884 (11th Cir.1983), and *United States v. Markus*, 603 F.2d 409, 413 (2d Cir.1979), [his] sentence has been increased."[3] But, "when an appellate court

---

**3.** Mancari's counsel explains that: "For *Pearce* purposes, the *Monoco* and *Markus* courts compared the ... two sentences (to determine whether an increase had occurred) after disregarding the sentence on the count which had dropped from the sentencing equation." In

affirms some counts and reverses others, it is open to the district court to resentence in order to effectuate the original sentencing intent." *United States v. Shue*, 825 F.2d 1111, 1113 (7th Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987). Application of *Monoco* and *Markus* in this case would not permit the original intent of the sentencing judge to be carried out because it would prohibit him from imposing any prison term on Mancari upon resentencing. In the case before us the judge viewed the totality of the defendant's criminal conduct, determined that it merited imprisonment for the purposes of penalizing the defendant for his criminal activity and also as a deterrent. It is obvious that the trial judge could have chosen to impose confinement on any or all of the convictions and unfortunately imposed prison time only on the single conviction that was overturned. The trial court is permitted to effectuate its original intent, and, as noted in *United States v. Shue*, 825 F.2d 1111, 1114: "[W]e are mindful of the Supreme Court's admonition in [*United States v. DiFrancesco*, 449 U.S. 117, 135, 101 S.Ct. 426, 436, 66 L.Ed.2d 328 (1980)] that ' "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." ' " (Quoting *Bozza v. United States*, 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947)).

In contrast, the government urges that we follow the First Circuit in *United States v. Pimienta–Redondo*, 874 F.2d 9, 12–16 (1st Cir.1989) (*en banc*), and the Fourth Circuit in *United States v. Gray*, 852 F.2d 136, 138 (4th Cir.1988). In *Pimienta–Redondo*, the district court originally imposed on one defendant consecutive sentences of five years' imprisonment on two counts or a total sentence of ten years and imposed consecutive sentences on the same two counts of six years for a total sentence of twelve years on the other defendant. On appeal a panel of the First Circuit held that the two counts did not

constitute separate offenses and affirmed each defendant's conviction on one count while reversing each defendant's conviction on the other count. The case was remanded for resentencing of each of the defendants on the count which was affirmed, and the trial court sentenced the defendant who had originally received consecutive five-year terms of imprisonment to a ten-year period of incarceration and the defendant who had previously received consecutive sentences of six years' incarceration to a term of twelve years' imprisonment.

On appeal of the resentencing, the First Circuit held that *Pearce* did not apply, noting that: "The sentences imposed after remand were sufficiently within the integument of the district court's original sentencing plan that neither Pupo nor Pimienta–Redondo could have had any reasonable apprehension that harsher punishment was meted out in retaliation for claiming an appeal." *Pimienta–Redondo*, 874 F.2d at 15–16. In arriving at the decision, the appeals court enumerated the particular problems confronting a court on resentencing after an appellate court has reversed convictions on one or more of the counts in a multi-count case while permitting the convictions and sentences imposed on other counts to stand:

"[T]he authority to reshape a sentence when multi-count convictions garner mixed reviews on appeal—some affirmed, some reversed—looms as an integral component of the trial judge's broad sentencing discretion. *See Wasman* [*v. United States*, 468 U.S. 559, 563–64, 104 S.Ct. 3217, 3220–21, 82 L.Ed.2d 424 (1984) (plurality opinion)]. Society has a strong interest in ensuring that, in our criminal jurisprudence, punishment 'will suit not merely the offense but the individual defendant.' *Id.* at 564, 104 S.Ct. at 3220. The district court, in tailoring a sentencing package, protects this interest by considering a 'breadth of information.' *Id.* The offenses charged estab-

---

Mancari's case, if the four-year sentence on the reversed conspiracy conviction was disregarded under *Monoco* and *Markus*, Mancari's original sentence would be considered one of five years'

probation and imposition of a four-year prison sentence on resentencing would be considered an increase in sentence.

lish a permissible range of punishment and the court then designs the ultimate sentencing plan by considering the accused's actual conduct during the criminal enterprise, as well as his life, health, habits and background. The myriad of other factors underlying the original sentence in a multiple count case are not necessarily altered when a defendant successfully appeals his conviction on one count. After an appellate court unwraps the package and removes one or more charges from its confines, the sentencing judge, herself, is in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate). Seen in the lights of these realities, retrofitting a sentence after a conviction is sustained in part and vacated in part seems altogether a sensible, fully legitimate response to criminal conduct.

Put another way, *when a defendant is found guilty on a multi-count indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal."*

*Pimienta–Redondo,* 874 F.2d at 14 (footnote omitted, emphasis added). Similarly, in *United States v. Gray,* 852 F.2d 136, 138 (4th Cir.1988), the court determined that a "resentencing will not be considered vindictive if the ultimate sentence for one or more counts does not exceed that given for all counts sentenced at the conclusion of the first trial." Application of *Gray* to

Mancari would not result in an increased sentence nor would the *Pearce* presumption of vindictiveness apply if the total period of confinement at resentencing did not exceed the time he received as a result of his earlier conviction.

Our approach to the problem of resentencing in cases involving multiple-count convictions when one or more of the convictions and sentences are set aside and others are affirmed on appeal is in general harmony with those of the First Circuit in *Pimienta–Redondo* and the Fourth Circuit in *Gray.* In *United States v. Shue,* 825 F.2d 1111, 1113, 1114 (7th Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987), we dealt with a resentencing on a single count of conviction following the reversal of appeal of the remaining three counts of conviction. The defendant was originally convicted on conspiracy, attempted bank robbery and two counts of bank robbery. *Shue,* 825 F.2d at 1112 n. 1. Shue was sentenced to five years' imprisonment on the conspiracy count, a consecutive 25 years in prison on one bank robbery count, and two concurrent five-year terms of probation on the other bank robbery count and the attempted bank robbery count to be served consecutively to the period of confinement. In his first appeal we reversed Shue's convictions on the conspiracy count, the attempted bank robbery count and the bank robbery count carrying the 25–year sentence and remanded for a new trial. The conviction on the remaining bank robbery count, which had originally carried a sentence of probation, was affirmed without specific directions concerning resentencing. *Shue,* 825 F.2d at 1112 n. 2. The government then moved to resentence Shue on the bank robbery count affirmed. The trial court granted the government's request and resentenced Shue to twenty years' imprisonment on the bank robbery count wherein a five-year probationary period was originally imposed in the overall sentencing package. *Id.*[4] Shue then appealed the resentencing and included a claim that his rights

---

**4.** At the time of his resentencing, Shue had not been retried on the three reversed counts.

*Shue,* 825 F.2d at 1112.

under the due process clause, as construed in *Pearce,* had been violated.

In addressing Shue's appeal, we began with a recognition of the district court's authority to resentence Shue and discussed the problems a trial court faces in resentencing a defendant after an appellate court affirms certain convictions and reverses others:

> "The district court was quite right in perceiving that the nature of the proceedings in this court during the first appeal supplied no reason for a deviation from the general rule that, when an appellate court affirms some counts and reverses others, *it is open to the district court to resentence in order to effectuate the original sentencing intent . . . .*
>
> *When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent.* When, on appeal, one or more counts of a multicount conviction are reversed and one or more counts are affirmed, the result is an 'unbundled' sentencing package. *Because the sentences are interdependent, the reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions.*"

*Shue,* 825 F.2d at 1113, 1114 (emphasis added) (citations omitted). Although the resentencing in *Shue* resulted in a 20–year sentence for one count on which the defendant had previously received a five-year probation term, we held that the defendant's due process challenge to resentencing based upon *Pearce* failed because the resentencing complied with the original intent of the district court at the time of the sentencing. *Shue,* 825 F.2d at 1115–16. The court had merely transferred its sentence of imprisonment from one count to another and had actually decreased rather than increased the aggregate prison time (reduced from 25 to 20 years). We stated:

> "*Pearce* . . . does not apply to the facts of this case. Although Mr. Shue argues that his sentence has been enhanced and that the government is trying to penalize him for exercising his right to appeal, the new sentence does comply with the original sentencing intent of the district court as articulated in its memorandum opinion granting the government's motion to resentence Mr. Shue: 'Defendant Shue was originally sentenced on [the bank robbery count carrying a probation term] in the context of a lengthy prison sentence in the companion convictions which have since been reversed. In the absence of the other convictions, Shue, a master and recidivist criminal as shown at trial and as documented in the presentence reports, would not have been sentenced to probation.' "

*Shue,* 825 F.2d at 1116 (citation omitted).

The reversal of Mancari's original conspiracy conviction disrupted the district court's intent in the imposition of sentence. The trial court, at the time of resentencing, was required to redesign a sentencing package to fit the punishment to the criminal as well as the crime, including a penalty as well as a deterrent. The court was confronted with the same drug activity as it considered at the time of the imposition of the original sentence. The valid drug delivery convictions and sentences and the overturned conspiracy conviction (reversed for technical reasons) were part and parcel of the same underlying unlawful conduct. The trial court, as evidenced by the time given, originally intended to impose a relatively short prison sentence (four years) for this criminal activity. In resentencing Mancari, the trial court ordered Mancari to serve the same four-year term of imprisonment on one count and imposed two five-year concurrent terms of probation on the remaining counts to be served consecutively to the prison term. Thus, the aggregate sentence the trial court imposed upon remand amounted to the same period of incarceration and probation and did not increase Mancari's sentence. In resentencing Mancari the judge specifically emphasized his deep concern with the deterrence factors mentioned previously at the original sentencing. Based upon the foregoing

considerations, it is clear that the court resentenced Mancari according to its original intention after its previous sentencing package was dismantled upon reversal of Mancari's conspiracy conviction. As we noted in *Shue:* "[W]hen an appellate court affirms some counts and reverses others, it is open to the district court to resentence in order to effectuate the original sentencing intent." 825 F.2d at 1113. As we also observed:

"When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent.... Because the sentences are interdependent, the reversal of convictions underlying *some, but not all, of the sentences renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions.*"

*Shue,* 825 F.2d at 1114 (emphasis added). As the First Circuit similarly noted:

"When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal."

*Pimienta–Redondo,* 874 F.2d at 14. The trial judge could, at the original sentencing or upon remand, have imposed prison time on any or all of the original four counts of conviction. We refuse to allow, upon remand necessitated by reversal of defendant's conspiracy conviction, the defeat of the district court's original sentencing intentions. We conclude that the trial court's resentencing of Mancari does not violate the due process clause.

AFFIRMED.