In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-1425

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

KIMBERLY PRUDE,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 162—**Rudolph T. Randa**, *Chief Judge.*

_____

ARGUED DECEMBER 6, 2006—DECIDED JUNE 14, 2007

_____

Before POSNER, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge.*  On June 28, 2005, Kimberly Prude was indicted on one count of voter fraud in violation of 42 U.S.C. § 1973gg-10(2)(B). The charge was based on her own conduct in representing that she was eligible to vote and in casting a single absentee ballot, despite being a convicted felon under the supervision of the Wisconsin Department of Corrections and, therefore, ineligible to vote under Wisconsin law. *See* Wis. Stat. § 6.03. She was convicted of voter fraud and sentenced by the district court to twenty-four months' imprisonment. Ms. Prude timely

appeals her conviction. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

During the 2004 election cycle, Ms. Prude was serving a term of supervised release for a forgery conviction in Wisconsin. This crime is a felony under Wisconsin law and, because her sentence was not yet complete, she was ineligible to vote under Wisconsin law. Wis. Stat. § 6.03(1)(b); *see also* § 304.078(3) (providing for the restoration of the right to vote for felons *at the conclusion of a term of probation or parole* for the offense that led to voting disqualification). At regular intervals throughout her period of supervision, Ms. Prude was required to meet with a corrections officer and, on numerous occasions, also was required to acknowledge and sign a copy of the rules of her supervision. Among these rules was one that stated, "[y]ou shall not, as a convicted felon, and until you have successfully completed the terms and conditions of your sentence, vote in any federal, state or local election." Exs.11-14, 20.

At the suggestion of an acquaintance, Ms. Prude became a volunteer for candidates in the 2004 presidential election campaign in the weeks leading up to the election. She made calls encouraging area residents to vote and offering to arrange transportation or absentee ballots for those who requested it. On October 22, 2004, with fellow campaign workers, she attended a rally at which all persons were encouraged to march to Milwaukee City Hall, register to vote, request an absentee ballot and vote in the 2004 presidential election; Ms. Prude did all of these things

with her fellow marchers. She testified that, on the day she cast her vote, she observed no signs telling her that persons on supervision could not vote. The registration card she signed, which was introduced into evidence at trial, asked only two specific eligibility questions: whether she was a United States citizen and whether she would be at least eighteen years of age on election day. Above the signature block, the card further provided,

> I certify that I meet the eligibility requirements of the State of Wisconsin, and that the information I have provided is true to the best of my knowledge under penalty of perjury. If I have provided false information, I may be subject to a fine or imprisonment or both under Federal or State laws.

Ex.1. Ms. Prude also filled out an application to be officially employed by the Election Commission as a poll worker on Election Day and was hired.

Ms. Prude's statement was that, the following day, she was discussing her volunteer work with a friend, who informed her that, because she was a felon whose civil rights had not yet been restored, she was ineligible to vote. *See* R.19 at 3. Ms. Prude further testified that she called her probation officer and told him that she would be working the polls on Election Day. She testified that the officer told her that she could not vote. She further testified that, at this point, realizing the gravity of her mistake, she attempted to withdraw her ballot by contacting the Election Commission, but was told not to worry about it by a Commission staff person. She testified that she received no further information regarding the withdrawal process from the person with whom she spoke at the Commission and therefore took no further action.

Ms. Prude continued volunteering for the campaign for a few days, then began a paid position in a community get-out-the-vote campaign with an organization called Project Return.

On Election Day, she reported to the location assigned to her by the Election Commission for her poll worker position and worked as scheduled.

She was arrested in 2005 following an investigation into voting fraud in Milwaukee and charged based on casting a ballot despite being an ineligible voter.

At trial, in addition to introducing Ms. Prude's signatures on five separate "Rules of Community Supervision," each of which contained a reminder that she would be ineligible to vote until she had completed her term of supervision or parole, the Government also introduced evidence that signs were posted at City Hall on the date that Ms. Prude had registered and voted and at the front desk of the parole office during the period in which she was required to report; each of these signs reminded felons that they were ineligible to vote during parole, probation and supervision. The Government further introduced the testimony of one of Ms. Prude's probation officers, who specifically stated that, in September of 2004, Ms. Prude had indicated her desire to volunteer for the campaign and that the officer had reminded her at that time that she was ineligible to vote. The officer stated that Ms. Prude specifically acknowledged during that conversation that she understood she could not vote; Ms. Prude testified to the contrary. The Government also introduced substantial evidence of Ms. Prude's conduct *on* Election Day, though she was not charged in relation to any of her activities on that day; its theory apparently was that her conduct as a poll worker was probative of an

intent to defraud at the time she voted, an element of the charge.[1]

At the conclusion of a three-day trial, the jury convicted Ms. Prude of voting fraud, and the district court imposed a twenty-four month sentence, to be served concurrently with a sentence imposed by the Wisconsin courts on other charges.

## II

## DISCUSSION

Ms. Prude was convicted under 42 U.S.C. § 1973gg-10.[2]

---

[1] Ms. Prude does not raise any challenge to the general admissibility of the Government's evidence of her Election Day conduct.

[2] 42 U.S.C. § 1973gg-10, under which Ms. Prude was convicted, provides:

> A person, including an election official, who in any election for Federal office—

(1) knowingly and willfully intimidates, threatens, or coerces, or attempts to intimidate, threaten, or coerce, any person for—

> (A) registering to vote, or voting, or attempting to register or vote;

> (B) urging or aiding any person to register to vote, to vote, or to attempt to register or vote; or

> (C) exercising any right under this subchapter; or

(2) knowingly and willfully deprives, defrauds, or attempts to deprive or defraud the residents of a State of a fair and impartially conducted election process, by—

> (A) the procurement or submission of voter registration applications that are known by the person to be materi-

(continued...)

Ms. Prude now challenges three rulings made by the district court during the course of her trial. Each will be discussed in turn.

## A.  Rosie Caradine-Lewis' Testimony

Ms. Prude challenges the district court's admission, over her objection, of the testimony of Rosie Caradine-Lewis, the Chief Inspector at the polling location where Ms. Prude worked on Election Day.

At trial, Caradine-Lewis testified concerning the activities of a woman sent to work at her polling location on Election Day. Caradine-Lewis was unable to identify that woman by name and could not recognize Ms. Prude in the courtroom. At one point, in answer to the prosecutor's

---

[2]  (...continued)

> ally false, fictitious, or fraudulent under the laws of the State in which the election is held; or

> (B) the procurement, casting, or tabulation of ballots that are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held,

shall be fined in accordance with Title 18 (which fines shall be paid into the general fund of the Treasury, miscellaneous receipts (pursuant to section 3302 of Title 31), notwithstanding any other law), or imprisoned not more than 5 years, or both.

42 U.S.C. § 1973gg-10.

Ms. Prude has not challenged whether the charged conduct is within the statute's prohibition nor whether sufficient evidence supported her conviction and, therefore, these issues are not before us.

question, she referred to the woman who was the subject of her testimony as the woman "who you all told me is Kimberly Prude." R.49 at 103. After allowing the foundation questioning to proceed, Ms. Prude's attorney objected: "We don't know who the person is that Miss Lewis is speaking about. She hasn't been able to identify --." *Id.* at 104. The court interrupted counsel and responded, "No, it goes to the weight, not the admissibility. So the Court will allow it." *Id.*

Caradine-Lewis proceeded to testify that she had become concerned when, on Election Day, she observed the unidentified registration worker signing a card when no registrant was seated with her. *See id.* at 108-09. She also testified concerning two registration cards for the same voter, one with different handwriting than the first, both counter-signed by Ms. Prude verifying the identity of the voter.

Ms. Prude specifically contends that the testimony was irrelevant and prejudicial because an appropriate foundation linking Ms. Prude to the woman Caradine-Lewis described had not been laid. Ms. Prude appears to be arguing that the woman to whom Caradine-Lewis referred could have been someone else. By allowing the testimony, she contends, the court suggested to the jury that it should attribute that woman's questionable activities to Ms. Prude.

We review a district court's decision to admit evidence over an objection, including for lack of foundation, for an abuse of discretion. *United States v. Thomas*, 294 F.3d 899, 904 (7th Cir. 2002). Further, we shall not overturn erroneous evidentiary rulings if the error is harmless. *United States v. Chavis*, 429 F.3d 662, 667 (7th Cir. 2005).

We have observed that "no rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). Ms. Prude's "foundation" objection is essentially that relevance, and therefore, admissibility, were not established and that prejudice resulted to Ms. Prude. *See* Fed. R. Evid. 401 (stating that relevant evidence is any evidence tending to make the existence of any material fact more or less probable); Fed. R. Evid. 402 (providing that relevant evidence is generally admissible).

The difficulty Ms. Prude faces is that, regardless of whether the admissibility Caradine-Lewis' testimony was correctly decided, the record discloses no actual dispute that, on Election Day, Ms. Prude indeed was the registration worker at the Rose Park Senior Center where Caradine-Lewis had been the Chief Inspector. *See* R.50 at 244, 268-70. Multiple exhibits introduced by the Government placed Ms. Prude at the registration desk of that location.[3] Indeed, during her testimony, Caradine-Lewis identified some of these documents as originating at her polling location and read aloud the name of the verifying registration worker as "Kimberly P-R-I-D-E" and "Kimberly E. Prude." R.49 at 106, 107. During Ms. Prude's *own* testimony, she stated that she had worked at the Rose Park location, described in particular her work at the registration desk, *see* R.50 at 235-39, and referred to conversations with a woman named "Rose," *id.* at 235, 236.

---

[3] *See* Ex.4 (list of registered voters at polling location, signed "Kimberly E. Prude"), Exs.5-7 (on-site registration cards from the Rose Park location signed by "Kimberly Prude" as the corroborating witness).

Ms. Prude also entered into a stipulation with the prosecution that she was hired as a paid poll worker to work at the Rose Park Senior Center on Election Day.

The district court did not err in admitting the testimony of Caradine-Lewis over Ms. Prude's objection.

## B. Testimony Concerning the Procedures for Withdrawal of Her Vote

Ms. Prude next claims that she was denied, on relevancy grounds, the opportunity to introduce testimony about the procedures for withdrawing the vote that, she maintains, she cast unaware that the law forbade her from voting. Consequently, she contends, she was denied the opportunity to submit evidence in support of her theory of defense. She further claims that the district court later permitted the Government to explore the same topic with a less favorable witness.

At trial, the defense sought to introduce the testimony of Sue Edman, the Director of the Milwaukee Election Commission at the time of trial. The defense proffered Director Edman's testimony on several distinct subjects. First, defense counsel stated that Director Edman would testify that Ms. Prude was indeed an official poll worker at the Rose Park Senior Center on Election Day and that she had been compensated for her work. This testimony was offered to respond to Caradine-Lewis' testimony that she had attempted but failed to verify with the Election Commission that Ms. Prude was an official staff member on Election Day. Second, defense counsel stated that Director Edman would testify that, at the time Ms. Prude voted, there was no policy in place to effectuate the withdrawal of a ballot once cast. In the defense's

view, this testimony would have supported Ms. Prude's contentions that she unsuccessfully had attempted to withdraw her ballot. This testimony also would have responded to testimony by Caradine-Lewis and Edith Greene, both of whom had stated that there were such procedures. Third, defense counsel stated that Director Edman would testify that the Election Commission office, in which Ms. Prude had registered and voted, was chaotic during the election period; the defense believed this testimony would have supported its argument that Ms. Prude was unable to see any signage that might have been posted.

The Government objected to Director Edman's testimony on the ground that she lacked personal knowledge; it pointed out that she had assumed her responsibilities with the Election Commission only after the relevant election cycle. The Government also submitted that her testimony would confuse and mislead the jury. It agreed, however, to stipulate to Ms. Prude's official employment on Election Day.

After a substantial colloquy with counsel, the district court concluded that the testimony describing the office chaos was "not relevant" to the offense. R.49 at 165. With respect to the procedure for withdrawal, the court stated:

> to allow this witness to testify to . . . [the] procedure for withdrawing—that's a matter I don't think we have touched on . . . . I don't think that that's relevant, because what happened after the four elements were met doesn't really impact the case. Or the elements of the offense. Except the theory of the defense could be, well, she didn't really intend to deprive or defraud the residents of Wisconsin, because she took steps to withdraw her vote after she found out that she did

wrong. And that argument can be made without indicating that there were any—or there was a lack of policies in the Election Commission for anyone to do that.

We have the testimony of Detective Sandvick that indicates that he was told that by—I believe, if I recall the testimony, he was told that by the Defendant. That she tried to correct this after she found out from her Probation Officer that she wasn't supposed to do this. So it, I suppose, can be—can still be argued, but whether or not there were policies in place at the Election Commission to do this, to recover from an improper vote, or casting of an improper vote, I don't think that's relevant.

. . . . It's a waste of time. It is going into collateral matters that would serve to confuse the jury.

*Id.* at 167-68.

The court therefore ruled that it would allow Director Edman's testimony only as custodian of public records to establish Ms. Prude's employment. The parties entered into a stipulation as to this fact, and therefore Edman was not called as a witness.

Later, Ms. Prude's counsel called Officer Neil Saxton to the stand. Counsel's line of inquiry on direct examination focused on Officer Saxton's investigation of Ms. Prude's Election Day activities. Specifically, one item in evidence was a set of two different voter registration cards, each purporting to verify the identity of the same voter. Ms. Prude had counter-signed both of these cards, and another individual, Lawrence Madison, had provided an additional verification signature on one of them. Defense counsel tested the thoroughness of Officer Saxton's investi-

gation into the duplicate cards. She asked Officer Saxton if he had investigated whether Madison improperly might have verified the card. She then asked about the extent of any conversations Officer Saxton had had with Ms. Prude herself during his investigation. When he stated that he spoke with Ms. Prude when she was arrested, counsel asked what Ms. Prude had said, if anything. Over the Government's hearsay objection, Mr. Saxton stated that she had said something about calling the Election Commission to withdraw her vote. *See id.* at 194-95.

On cross-examination, the Government asked Officer Saxton if he was "aware of a procedure for someone to challenge their [sic] vote, an absentee ballot, once it's been cast." *Id.* at 196. Officer Saxton responded with a lengthy explanation of how someone else would challenge another voter's ballot, if he believed that the voter had been ineligible and therefore that the vote should not be counted. No objection was made to this testimony.

On appeal, Ms. Prude argues that it was error for the court to admit Officer Saxton's testimony on withdrawal procedures after ruling that Edman's testimony was inadmissible because it was irrelevant. The Government responds that Ms. Prude opened the door to Officer Saxton's testimony on the point by asking him about her statements made at the time of arrest. Because the defense did not object to the introduction of this evidence at trial, we review for plain error. "Before we may correct an error not raised at trial, we must find (1) that there is error, (2) that it is plain, and (3) that it affects substantial rights. Once these three conditions have been met, we may exercise our discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. James*, 464 F.3d 699,

709 (7th Cir. 2006) (citation omitted). It is the defendant's burden to establish that substantial rights were affected by establishing that, but for the error, the outcome of the trial probably would have been different. *Id.*

We cannot accept the Government's view that the defense had opened the door to this testimony in its direct examination of Officer Saxton. Fairly read, the direct examination was limited to Ms. Prude's subjective belief that she had cast the vote while under the mistaken belief that she was not forbidden to vote. During its earlier ruling on the defense's proffer of Edman's testimony, the district court clearly anticipated that Ms. Prude would and could introduce such evidence of her own attempts to withdraw her ballot as circumstantial evidence of her good faith, without the necessity of any further examination of the existence of procedures for doing so. R.49 at 167-68 ("[T]hat argument [regarding her personal attempt to withdraw] can be made without indicating that there were any—or there was a lack of policies."). By contrast, the Government's inquiry on cross-examination was designed to elicit evidence on the objective existence of a procedure for withdrawing a vote—the very issue that the district court had ruled was out-of-bounds during Director Edman's testimony.

We think it clear that Director Edman's proffered testimony, as sought to be introduced by the defense, and Officer Saxton's testimony, as elicited by the Government, covered identical topics. Yet, the district court excluded the Director's testimony as irrelevant and inadmissible, but admitted the Officer's without objection. In short, the Government introduced testimony on a topic that the court already had ruled inadmissible. The Government's contention that Ms. Prude opened the door in her direct

examination of Officer Saxton is plainly contrary to the court's earlier ruling on Director Edman's testimony.

Nonetheless, in plain error review, we may reverse only on the basis of errors "so obvious, crucial, and egregious that we should correct it despite the absence of an objection below." *United States v. Firishchak*, 468 F.3d 1015, 1026 (7th Cir. 2006). In light of the trial record as a whole, Ms. Prude cannot satisfy her burden, in review for plain error, to establish some probability that the outcome of the trial would have been different. In addition to Officer Saxton's testimony on this point, both Greene and Caradine-Lewis had placed statements before the jury regarding the availability of some challenge procedures.[4] In this regard, Officer Saxton's testimony, though perhaps more detailed, added little to the record. It was cumulative of prior testimony, all of which was uncontroverted, pursuant to the court's earlier ruling. In any event, as the district court ruled, the existence of procedures for withdrawal of a vote is of only marginal, if any, relevance to the issue of Ms. Prude's guilt. Under these circumstances, we cannot conclude that the admission of this testimony constitutes error reversible by this court.

---

[4] Greene had testified, as Officer Saxton did, about the procedures someone would use to challenge an absentee ballot on Election Day at a polling location. She stated that, as absentee ballots are processed at the polling location, the name of the absentee voter is called out. Persons at the location may challenge the validity of that ballot by filling out a form; according to Greene, although the ballot is processed, it is marked with a "C" for challenged. Caradine-Lewis merely confirmed the existence of a procedure for challenging an absentee ballot at the polling location on Election Day. *See* R.49 at 40-41 (Greene), 110 (Caradine-Lewis).

### C.  Theory of Defense Instruction

Ms. Prude also maintains that the district court erred in refusing to give the jury her preferred instruction on the theory of the defense.

During the instruction conference, the defense offered a theory-of-defense instruction on mistake. *See* R.50 at 289. The proposed instruction read:

> In deciding whether the defendant acted with [intent to defraud the citizens of Wisconsin of a fair elections process], you must consider the evidence that the defendant believed that [she could vote]. If an honest error of fact results in a person's not having the [intent] required for the crime, the person is not guilty of that crime. Before you may find the defendant guilty, the [Government] must prove by evidence that satisfies you beyond a reasonable doubt that the defendant [intended to deprive the citizens of Wisconsin of a fair elections process].

Wisconsin Jury Instructions: Criminal, Vol. 1, Instruction 770 (Mistake); *see* R.50 at 292. In response, the Government tendered a pattern instruction on good faith and stated that it had no objection to its being given to the jury. After reviewing both instructions, the district court concluded:

> [I]t would appear that the defense here is relying upon the fact that the Defendant did not know until after she voted that this was against the law. There is also the theory of defense that the Court has heard that in that connection she didn't see any signs. She was unaware. Wasn't on notice. So I think the good faith instruction is more parallel or more consistent, I should say, with what is defense theory.

I think it would be error appealable by the Government if the Court allowed a mistake instruction to go forward on this, because what the Court has heard is Miss Prude didn't know that was the law. Once she found out she in good faith acted to correct it, and that negatived the intent that the Government has to prove in this case.

R.50 at 294. There was no further objection by either party.

The jury was given the good faith instruction; it stated:

Good faith—which has been read to you during the closing arguments—on the part of the Defendant is inconsistent with intent to defraud the residents of Wisconsin of a fair and impartially conducted election process. The burden is not on the Defendant to prove her good faith. Rather, the Government must prove beyond a reasonable doubt that the Defendant acted with intent to defraud the residents of Wisconsin of a fair and impartially conducted election process.

R.50 at 348. The jury also was instructed that the Government must prove beyond a reasonable doubt each of the elements of the offense, including that Ms. Prude "knew that the ballot was materially false or fraudulent," and that she "cast her ballot with the intent to deprive or defraud the residents of Wisconsin of a fair and impartially conducted election process." R.27; *see also* R.50 at 349. The jury also was instructed that "the words 'knew' and 'knowingly' mean that the defendant realized what she was doing, was aware of the nature of her conduct, and did not act through ignorance, mistake, or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case." R.27; *see also* R.50 at 350.

We review a district court's refusal to give a theory of defense instruction de novo. *United States v. Eberhart*, 467 F.3d 659, 666 (7th Cir. 2006). "A defendant is entitled to a jury instruction as to his or her particular theory of defense provided: (1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the appellant a fair trial." *Id.* (citing *United States v. Buchmeier*, 255 F.3d 415, 426 (7th Cir. 2001)). However, "[w]e defer to the substantial discretion of the district court for the specific wording of the instructions, and in rejecting a proposed instruction, so long as the essential points are covered by the instructions given." *United States v. Koster*, 163 F.3d 1008, 1011 (7th Cir. 1998) (citing *United States v. Scott*, 19 F.3d 1238, 1245 (7th Cir. 1994)).

The parties agree that the instruction tendered by Ms. Prude accurately stated the law and was supported by the evidence. They contest, however, whether the instruction offered ultimately was encompassed within the charge as a whole and whether its absence affected the fairness of the proceedings. The critical question is therefore whether the tendered instruction's substance was part of the charge. In answering this question, we must consider whether the instructions as a whole adequately informed the jury of the theory of defense. *See United States v. Given*, 164 F.3d 389, 394-95 (7th Cir. 1999) (rejecting a claim that a specific good faith instruction was necessary when the jury adequately was apprised of the requirement of intent using the Circuit's pattern knowledge instruction).

We previously have considered and rejected claims that a district court was required to give a good faith theory-of-

defense instruction. In those cases, we concluded that the general pattern instruction that "knowledge" means "that the defendant realized what she was doing, was aware of the nature of her conduct, and did not act through ignorance, mistake, or accident," R.50 at 350, adequately expresses the substance of a good faith defense. *See Given*, 164 F.3d at 394 (stating that, where the district court "did not use the words 'good faith,' but [] did make it clear that" the Government had to prove that the defendant acted with the specific knowledge that was an element of the offense *and* that the burden would not be met if the defendant acted through "ignorance, mistake or accident," the instructions made the theory of defense "abundantly clear to the jury"); *United States v. Manjarrez*, 258 F.3d 618, 627 (7th Cir. 2001) (holding that "careful and straightforward explanations of the degree of knowledge and intent that the government must prove," in addition to an "ostrich instruction," was sufficient to apprise the jury of the good faith theory of defense).[5]

The good faith instruction, particularly when read together with the instructions describing the intent element of the offense, encompasses a defense based on mistake.

---

[5] Ms. Prude's contention that the two instructions are fundamentally different insofar as mistake bears on the *specific* intent to defraud, while good faith is a general intent defense, is not supported by our cases. *See United States v. Lang*, 644 F.2d 1232, 1240 (7th Cir. 1981) (approving of a jury instruction as a proper statement of the law, which stated in part that "[g]ood faith constitutes a complete defense to one charged with an offense of which fraudulent intention is the essential element"). In any event, as given, the good faith instruction itself juxtaposed good faith against *the specific intent to defraud*. R.50 at 348.

Ms. Prude's instruction is more clearly worded and more directly links the relevant concepts for the jury. Nevertheless, the good faith statement accurately stated the law and, taken together with the instructions as to the specific intent element of the offense and the instructions regarding the meaning of knowledge, adequately apprised the jury that it could not conclude that she was mistaken about her eligibility to vote and simultaneously hold her criminally liable for casting a ballot. Any weakness in the instruction because it did not contain the specific language Ms. Prude often used—mistake, rather than good faith—did not dilute impermissibly her basic point that she could not be found guilty if she was mistaken about the legality of her conduct; it simply stated the point in broader terms. Ms. Prude's counsel remained free, within the context of the court's instruction, to emphasize her testimony that she was mistaken about the legality of her actions.[6]

We must conclude that Ms. Prude has not demonstrated that the jury was not instructed adequately on the theory of her defense or that, under the instructions as given, she was deprived of a fair trial.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

---

[6] Indeed, Ms. Prude's attorney did emphasize Ms. Prude's testimony that she was mistaken and also referenced the good faith instruction and its connection to the intent element of the charge in her closing argument. *See* R.50 at 333.

A true Copy:

      Teste:

                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*