NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 5, 2008
Decided November 5, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 06-4242

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 02 CR 1138 |
| ANTONIO OWENS, *Defendant-Appellant.* | Ronald A. Guzmán, *Judge.* |

**ORDER**

Antonio Owens is before us a second time. He was previously convicted of bank robbery and sentenced to 145 months' imprisonment, but on appeal we reversed the conviction and remanded for a new trial because the government had improperly introduced evidence that Owens robbed the very same bank years earlier. *United States v. Owens*, 424 F.3d 649 (7th Cir. 2005). At his second trial Owens was again found guilty, but this time he was sentenced to 162 months' imprisonment. In both trials the government theorized that shortly before the robbery Owens wrote a note demanding money and then waited in the getaway car while his cousin, Princeten Davis, used the note to rob the bank. In both trials Owens presented evidence of an alibi, but in the second trial the district court

refused to deliver a proposed alibi instruction to the jury because, the court concluded, that instruction was unsound given the government's aiding-and-abetting theory.

In this appeal Owens's lawyer filed a brief challenging only the increased sentence imposed. On that claim the government has confessed error because the court did not clearly point to new information not considered in the first sentencing that would justify the increase. Owens, however, was given leave to file a pro se supplemental brief. He argues, among other claims, that the district court erred by refusing to deliver his alibi instruction and, according to Owens, by once again admitting evidence of the prior robbery. At our request, counsel for the parties have further briefed the jury-instruction issue. We remand for resentencing but affirm Owens's conviction.

Owens was charged with robbing a branch of Harris Bank on October 19, 2002. *See* 18 U.S.C. § 2113(a). At the second trial in March 2006, both sides called the same witnesses they presented at the first trial, except that the government did not introduce the testimony of the teller who fingered Owens in the unsolved 1995 robbery of the same Harris branch. Princeten Davis, who testified against Owens in return for reduced prison sentences for his involvement in this robbery and another bank robbery, recounted the following version of events. Owens spent the night of October 18 with Davis at the home of Davis's mother in Bellwood, Illinois, a Chicago suburb. The next morning, October 19, Owens proposed to Davis that they rob a bank in Mellrose Park, another suburb near Bellwood. Owens and Davis left the house together and arrived at the target bank at approximately 9:15 a.m. Owens then wrote a demand note: "I have a gun. Please don't make me kill you. Put all the money on the counter. No one will get hurt." Owens instructed Davis to hand the note to a teller while he waited outside, but Davis got cold feet after entering the bank and aborted the robbery. Owens then drove the pair to the Harris branch on the west side of Chicago that Owens decided would be easier to rob. This time Davis committed the robbery and met Owens outside at the getaway car. Davis left the demand note at the bank. The two then returned to Bellwood.

Davis's mother, Nadine, and another of his cousins testified that within 24 hours of the robbery Owens had admitted that he and Davis robbed a bank. Diamond Mangum, a friend of Davis's, testified that hours after the robbery Owens spent roughly $1,000 on items for her and himself and admitted that he "robbed a bank before" to procure some of the money. Her testimony differed slightly from the first trial, where she said that Owens admitted robbing a bank "when he was younger." A forensic examiner testified that Owens left a fingerprint on the note and that Davis left three. And a document examiner opined after comparing the demand note with a sample of Owens's handwriting that Owens wrote the note. Brian Wrobel, who was a neighbor of Owens in Romeoville, Illinois, testified for the defense that on the day of the robbery Owens was washing a car parked in

Wrobel's driveway when Wrobel left his house a little before 9:00 a.m. Owens was there cleaning the car, said Wrobel, when he returned shortly after 10:30 a.m.

As he did during the first trial, Owens asked the district court to deliver this circuit's Pattern Jury Instruction 6.03, which informs the jury that the defendant introduced evidence that he was elsewhere when the crime occurred, and that the government must prove "the defendant's presence at the time and place of the offense." Although the district court had delivered that instruction to the jury at the first trial without objection from the government, the government did object at the second trial. The court sided with the government and declined to deliver the pattern instruction because, the court reasoned, the jurors could discount Davis's testimony putting Owens at the scene of the robbery and still convict him on an aiding-and-abetting theory if they found that he wrote the demand note. Moreover, the court offered, Owens's proposed instruction would require modification because it might confuse the jury into believing that the government had to prove that Owens was present inside the bank to obtain a conviction. Owens, however, did not try to rework the pattern instruction to address the court's concern. The court then instructed the jury that Owens could be convicted if he aided and abetted the robbery, though the government was required to prove all elements of the crime beyond a reasonable doubt. During closing arguments, the government mentioned Mangum's testimony that Davis admitted he "robbed a bank" to get the money for the gifts he bought her. Owens's closing focused on Wrobel's testimony.

At sentencing the district court highlighted Owens's extensive criminal history as well as Nadine's testimony that Owens had betrayed her by inducing her son to commit the robbery even as she showed Owens considerable hospitality. The court sentenced Owens to 162 months' imprisonment, 17 months longer than the term it imposed after the first trial.

We begin with the sentencing issue in light of the government's concession that the district judge did not clearly state why he increased the sentence. Owens argues that the higher sentence imposed on him after the retrial raises a presumption of vindictiveness that is unrebutted. Owens did not object to the higher sentence, so review here is for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732-35 (1993).

To ensure that a trial court does not punish a defendant for exercising his right to appeal, reviewing courts should consider whether a trial court acted vindictively if the court imposed a higher sentence on remand. Any concern can be overcome when the trial court explains that the increase was motivated by objective information concerning the defendant's conduct that occurred after the imposition of the original sentence. *North Carolina v. Pearce*, 395 U.S. 711, 725-26 (1969); *United States v. Warda*, 285 F.3d 573, 580 (7th

Cir. 2002); *United States v. Mancari*, 914 F.2d 1014, 1018 (7th Cir. 1990). The trial court may not base a higher sentence on conduct that was known at the time of the original sentence. *Mancari*, 914 F.2d at 1018. In this instance, the district court sentenced Owens to 145 months after the first trial and 162 months after the second trial. At the second sentencing hearing, the court did not clearly explain why it chose to impose a higher prison term. And the conduct the court cited to justify the 162-month sentence—Owens's extensive criminal history and his betrayal of the hospitality shown by Davis's mother—occurred before the first sentencing hearing. Thus the longer prison term raises a presumption of vindictiveness, and that presumption was not rebutted by the district court's articulated justification for the increase. *Id.* On remand the court need not impose a 145-month sentence; it may choose any sentence consistent with this opinion and our case law.

Owens's pro se brief raises four additional arguments, only two of which warrant discussion. First, Owens insists that Mangum's testimony at the second trial implicated him in an uncharged robbery, presumably the 1995 robbery that was improperly disclosed at his first trial. Although it is unclear whether Owens objected to Mangum's testimony, we assume he did because the government acknowledges that we should review this evidentiary question for abuse of discretion, not for plain error. *See United States v. Jumper*, 497 F.3d 699, 703-04 (7th Cir. 2007). Evidence of uncharged crimes is not admissible if it tends only to prove a person's propensity to commit bad acts. FED. R. EVID. 404(b); *Owens*, 424 F.3d at 653; *United States v. Godinez*, 110 F.3d 448, 455 (7th Cir. 1997).

At the second trial Mangum testified that hours after the robbery Owens treated her to a shopping spree and, when she asked, explained that he "robbed a bank before" to come up with the roughly $1,000 they spent. The reference to robbing a bank "before" could be understood to mean "before the charged bank robbery," but that strained interpretation is implausible. The jury in the second trial had not heard any evidence that Owens participated in an earlier robbery, whether the same Harris branch in 1995 or some other bank. In contrast with the first trial, then, the jury had no reason to think that Mangum's mention of robbing a bank "before" was a reference to an uncharged robbery. Given the context, the second jury could only have concluded that Mangum meant that Owens had confessed to her that he robbed a bank to get the cash for the spontaneous shopping trip. Indeed, it would have been a stretch for the jury to have assumed that Owens meant that he robbed a bank in the distant past and had saved the loot to take Mangum shopping. Thus, the district court did not admit testimony that the jury in the second trial could have construed as referring to any uncharged conduct.

Owens also argues that the district court erred by failing to deliver Pattern Jury Instruction 6.03, which reads: "You have heard evidence that the defendant was not present at the time and place where the offense charged in the indictment is said to have

been committed. The government must prove beyond a reasonable doubt the defendant's presence at the time and place of the offense." We review a district court's refusal to issue a theory-of-defense instruction de novo. *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008); *United States v. Prude*, 489 F.3d 873, 882 (7th Cir. 2007). Owens is entitled to a new trial only if his proposed alibi instruction represents an accurate statement of law, some evidence supports his theory of defense, his theory was not already covered by another portion of the charge, and the failure to include the instruction denied him a fair trial. *See Van Allen*, 524 F.3d at 823; *Prude,* 489 F.3d at 882.

We recently described an alibi as a "'defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime charged.'" *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (quoting BLACK'S LAW DICTIONARY 79 (8th ed. 2004)). A defendant doesn't necessarily have to be present at the scene in order to aid a crime. *See Gonzales v. Duenas-Alvarez,* 127 S.Ct. 815, 820 (2007). What is necessary is that he knew about an illegal activity, intended to help it succeed, and committed an act of assistance. *United States v. Samuels*, 521 F.3d 804, 811 (7th Cir. 2008). And, indeed, the commentary to Pattern Jury Instruction 6.03 emphasizes that an alibi instruction is not appropriate in a case in which "conviction of an offense charged could legitimately be accomplished without showing the defendant's presence at a particular place at a particular time" as is "often the case in prosecutions involving an aiding and abetting theory."

Owens's proposed instruction had the potential to confuse the jury about the elements the government needed to demonstrate. The government had no obligation to prove that Owens was present in the bank in order to convict him of aiding and abetting the robbery. But Owens's proposed instruction, which essentially directed the jury to acquit unless the government established Owens's "presence at the time and place of the offense," might have confused the jury into believing that Owens was not guilty if, as Davis testified, he waited in the getaway car during the robbery. Owens, though, did not need to go into the bank or even be *at* the bank given the government's theory that he aided and abetted the robbery by writing the demand note and pushing Davis to use it. *See United States v. Calabrese,* 490 F.3d 575, 579 (7th Cir. 2007) (defendant can be prosecuted for aiding and abetting a bank robbery if he drives the robber to the bank); *United States v. Lara*, 181 F.3d 183, 205-06 (2d. Cir. 1999) ("defendant could be found guilty as an aider and abettor if he knew of the plan and intended to assist in its accomplishment"). Thus Owens's proposed instruction would not have been appropriate even if Wrobel's testimony was believable.

And whether or not Wrobel was believable, the trial evidence demonstrates overwhelmingly that his testimony was inaccurate. Owens left a fingerprint on the

demand note, and a document examiner opined after comparing the note with his handwriting that Owens wrote it. Apart from that, Davis fingered Owens as his accomplice, which the $1,000 spending spree with Mangum hours after the robbery bears out. And Owens's confession to Mangum, Nadine, and another of his cousins leaves no doubt that the $1,000 did not come from washing Wrobel's car.

Accordingly, we AFFIRM Owens's conviction but VACATE his sentence.